1  Derrick Talerico (State Bar No. 223763)
   dtalerico@wztslaw.com
2  WEINTRAUB ZOLKIN TALERICO & SELTH LLP
3  11766 Wilshire Boulevard, Suite 730
   Los Angeles, CA 90025
4  Telephone: (424) 500-8552

5  Counsel to APPLIED POWDERCOAT, LLC

6

7

8  ## UNITED STATES BANKRUPTCY COURT

9  ## CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

10

11  In re:                                     Case No. 9:25-bk-10762-RC

12  APPLIED POWDERCOAT, LLC,                   Chapter 11

13          Debtor and Debtor in Possession.   Subchapter V

14
                                              **NOTICE OF EMERGENCY
15                                             MOTION AND EMERGENCY
                                              MOTION FOR ORDER
16                                             AUTHORIZING DEBTOR'S USE OF
                                              CASH COLLATERAL PURSUANT
17                                             TO 11 U.S.C. § 363 AND FED. R.
                                              BANK. PROC. 4001;
18                                             MEMORANDUM OF POINTS AND
                                              AUTHORITIES AND
19                                             DECLARATIONS IN SUPPORT
                                              THEREOF**
20

21                                            Hearing:
22                                            Date:      November 7, 2025
                                              Time:      9:00 a.m.
23                                            Courtroom: 201
                                              Place:     1415 State Street
24                                                        Santa Barbara, CA 93101
                                              (Appearances via ZoomGov)
25

26                                            Judge:  Hon. Ronald Clifford III

27

28

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

**PLEASE TAKE NOTICE** that on November 7, 2025 at 9:00 a.m., the Bankruptcy Court will hear the motion of Applied Powdercoat, LLC seeking use of cash collateral. The hearing may be attended in-person or via ZoomGov.  The ZoomGov connection details may be found at the following website address:  **https://forms.office.com/g/d3SqfMtsuv**.  Follow the prompts on the website to access the hearing.  Any objections may be made orally at the hearing.

**PLEASE TAKE FURTHER NOTICE** that Applied Powdercoat, LLC, a California limited liability company, the Chapter 11 debtor and debtor in possession (the "**Debtor**"), in the pending Chapter 11 Subchapter V bankruptcy case identified as *In Re Applied Powdercoat, LLC* (the "**Bankruptcy Case**" or the "**Case**"), hereby moves this Court for an order: (1) authorizing the use of cash collateral (as that term is defined by Section 363 of the Bankruptcy Code, "**Cash Collateral**") on an interim basis in accordance with the budget attached as **Exhibit 2** (the "**Budget**") to the concurrently filed Declaration of Osei Appiagyei (the "**Osei Declaration**"), with the authority (i) to exceed the amounts set forth in the Budget by fifteen percent (15%) of the Budget total, (ii) to carry forward to future months any budgeted but unused monies from previous months, without such carry forward counting towards the 15% variance; (2) setting a hearing for final approval of Cash Collateral use by the Debtor; and (3) following such final hearing, approving the Debtor's use of Cash Collateral on a final basis (the "**Motion**").

The Motion is brought pursuant to section 363(c)(2)(B) and (c)(3) of Title 11 of the United States Code (beginning at 11 U.S.C. §§ 101, et seq., the "**Bankruptcy Code**"), Rule 4001(b) of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**", and each individually, a "**Bankruptcy Rule**"), and Rule 4001-2 of the Local Bankruptcy Rules of the Central District of California (the "**Local Rules**", and each individually, a "**Local Rule**").

In order to prevent disruption to the Debtor's business operations, the Debtor respectfully requests that the Court grant this Motion on an emergency basis. The Debtor requires the immediate use of cash collateral, if any, of its secured creditor, First Bank of the Lake ("**FBOL**") to fund expenses necessary to maintain its operation, including the payment of payroll.

This Motion is based on the attached Memorandum of Points and Authorities, and the concurrently filed Brown Declaration.  Mr. Brown is the Debtor's Chief Financial Officer.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Pursuant to Local Bankruptcy Rule 4001-2, the Debtor submits that the interim relief requested by the Motion does not contain any of the following provisions.

| Provision | Paragraph |
|---|---|
| Cross-Collateralization clauses | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the validity, perfection or amount of the secured party's prepetition lien or debt or the waiver of claims against the secured creditor. | No |
| Provisions or findings of fact that bind the estate or all parties in interest with respect to the relative priorities of the secured party's prepetition lien. | No |
| Provisions that operate, as a practical matter, to divest the debtor in possession of any discretion in the formulation of a plan or administration of the estate or to limit access to the court to seek any relief under other applicable provisions of law. | No |
| Waivers of 11 U.S.C. Section 506(c), unless the waiver is effective only during the period in which the debtor is authorized to use cash collateral or borrow funds | No |
| Releases of liability for the creditor's alleged prepetition torts or breaches of Contract | No |
| Waivers of avoidance actions arising under the Bankruptcy Code. | No |
| Provisions that deem prepetition secured debt to be postpetition debt or that use postpetition loans from a prepetition secured creditor to pay part or all of that secured creditor's prepetition debt | No |
| Provisions that provide disparate treatment for the professionals retained by a creditors' committee form that provided for the professional retained by the debtor with respect to a professional fee carve out | No |
| Provisions that prime any secured lien | No |
| Automatic relief from stay upon default, conversion to chapter 7, or appointment of a trustee | No |
| Waivers of procedural requirements, including those for foreclosure mandated under applicable non-bankruptcy law, and for perfection of replacement liens. | No |
| Adequate protection provisions which create liens on claims for relief arising under 11 U.S.C. Sections 506(c), 544, 545, 547, 548, and 549. | No |
| Waivers, effective on default or expiration, of the debtor's right to move for a court order pursuant to 11 U.S.C. Section 363(c)(2)(B) authorizing the use of cash collateral in the absence of the secured party's consent. | No |
| Provisions that grant a lien in an amount in excess of the dollar amount of cash collateral authorized under the applicable cash collateral order. | No |
| Provisions providing for the paying down of prepetition principal owed to a creditor. | No |
| Findings of fact on matters extraneous to the approval process. | No |

The Debtor respectfully requests that the Court enter an order granting the Motion, substantially in the form attached hereto as **Exhibit 1**.

EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL

Dated:  November 5, 2025          **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By: _/s/ Derrick Talerico_
　　　 Derrick Talerico

Counsel to Applied Powdercoat, LLC

EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

The Debtor and FBOL have previously stipulated to the Debtor's use of its cash collateral on a month-to-month basis through September 2025. After agreeing to use of cash collateral for October, on October 29, 2025, FBOL withdrew its agreement for use of cash collateral for October and refused to execute a stipulation for continued use of cash collateral.

Debtor brings this motion on an emergency basis to obtain Court authority for use of Cash Collateral. The Debtor requires use of its Cash Collateral to fund its operations. Any disruption to its business will cause severe harm to the estate and creditor body.

### II.   JURISDICTION

This Court has jurisdiction to consider the Motion under 28 U.S.C. §§ 157 and 1334.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

### III.   COMMENCEMENT OF BANKRUPTCY CASE

The Debtor commenced this Bankruptcy Case by filing an emergency petition for relief under Chapter 11 of the Bankruptcy Code on June 6, 2025 (the "**Petition Date**").  The Debtor continues to carry out its business operations and manage its financial affairs as a Debtor in Possession pursuant to 11 U.S.C. §§ 1107 and 1108.  John-Patrick McGinnis Fritz has been appointed as the Subchapter V Trustee in the Bankruptcy Case.  No chapter 11 trustee, examiner, or committee has been appointed in the Bankruptcy Case.

### IV.   STATEMENT OF FACTS

#### a.   History of the Debtor and Its Business

The Debtor is a powdercoat application business. Powdercoating is the application of polymer resin typically to commercial parts and components to provide a color finish with protective properties.

The Debtor commenced this case because it was behind on payments to FBOL, its senior secured lender.  FBOL has a first priority lien on accounts receivable, inventory, and other assets. FBOL brought suit against the Debtor and was poised to obtain a default in that case. In addition,

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

creditor Expert Staffing West had commenced collection action on a default judgment.

**b.**     **The Debtor's Secured Creditors**

For ease of reference, all known secured creditors (as identified by filed financing statements), along with their asserted interests, are described in the chart below. The value of all of the Debtor's assets (including accounts receivable and inventory) is less than the claim of FBOL. As such, FBOL is the only secured creditor whose interests are secured by accounts receivable and inventory and implicated by this Motion:[1]

| Creditor Name | Description of Collateral | UCC-1 | Date UCC-1 Filed | Estimated Claim Amount |
|---|---|---|---|---|
| First Bank of the Lake | Personal property including A/R and inventory | UCC-1 (x1933) (California) | 7/7/2022 | $1,209,372.16 |
| Applied Powdercoat, Inc. | Limited personal property | UCC-1 (x0022) (California) | 8/15/2022 | $99,651.00 |
| First Bank of the Lake | All personal property | UCC-1 (x1933) (California) | 12/21/2022 | (duplicate) |

The Applied Powdercoat, Inc. ("**AP Inc.**") lien is associated with seller financing extended to the Debtor when it acquired AP Inc.'s business through an asset purchase agreement in 2022. The AP Inc. lien extends to certain specified personal property and does not cover accounts receivable or inventory. FBOL is the only secured creditor with an interest in accounts receivable and inventory.

**c.**     **Cash Collateral**

The chart below tracks Debtors cash and accounts receivable at relevant points in this Case: the Petition Date (establishing FBOL's interest in Cash Collateral); September 29 (the approximate date through which use of Cash Collateral was authorized), November 3 (approximate current value of Cash Collateral), and December 1 (estimated Cash Collateral value at the end of the current month).

---

[1] Expert Staffing West filed a UCC-1 on February 3, 2025. Expert Staffing West was never granted a security interest in any assets by the Debtor. A default judgment was entered against Debtor and in favor of Expert Staffing West on December 18, 2024 for $277,411.81.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

| Cash Collateral | Petition Date | September 29 | November 3 | December 1 (estimated) |
|---|---|---|---|---|
| Cash | $9,385 | $29,406 | $10,925 | $44,425 |
| Accounts Receivable | $143,200 | $179,135 | $190,472 | $200,472 |
| Total | $152,585 | $208,542 | $201,399 | $244,899 |

As the chart demonstrates, FBOL's interest in Cash Collateral has been well-protected throughout this Case. Replacement liens in post-petition receivables and cash have been more than adequate to protect FBOL's interest in Cash Collateral. As the Case has progressed, the security of FBOL's interest in Cash Collateral has trended up – currently with approximately $50,000 of increased value and a projected excess cushion of more than $90,000 through November. The Debtor has demonstrated that its operations and financials are stable and improving. If Debtor is allowed to continue operations, Debtor has and will have more than adequate collateral for replacement Post-Petition Liens to cover the Cash Collateral proposed to be used. Given the income generated by operations, the Debtor submits that the interests of FBOL are adequately protected by the Post-Petition Liens. The Debtor's proposed budget for use of Cash Collateral (the "**Budget**") is attached hereto as **Exhibit 2**. The Budget is specific to November 2025, but Debtor proposes the Budget as the controlling budget for the Case.

### d.    The Debtor's Bankruptcy

The Debtor's Bankruptcy Case has been driven by resolving the cost of its lease. After first pursuing a relocation out of Santa Barbara, Debtor determined its business would need to remain in or near Santa Barbara to be successful. Debtor then explored a multitude of options in Santa Barbara including remaining in its current space with its landlord, Hagan Capital LLC ("**Hagan**"). Ultimately, Debtor and Hagan could not agree on terms for Debtor to remain. Debtor has now submitted an LOI for a new lease on a location for which Debtor intends to move to by year end. Hagan has agreed to allow Debtor to remain in their current location through the end of the year in exchange for continued monthly rent payments of $18,500. The Debtor has filed a subchapter V plan based upon the new selected location. Debtor will negotiate with FBOL and Hagan to address an objections to the plan they may raise.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

e.    **Use of Cash Collateral During the Case**

The Debtor and FBOL have previously stipulated to the Debtor's use of its cash collateral [Dkt. 15], approved by order of this Court [Dkt. 43] (the "**First Stipulation and Order**"). The First Stipulation and Order approved Debtor's use of cash collateral for the months of July and August pursuant to weekly budgets and as further set forth therein. The First Stipulation and Order also provided a mechanism for further use of cash collateral on a monthly basis upon filing of further stipulations which would take effect without further order of the Court. The Debtor and FBOL filed one such stipulation for continued use of cash collateral for the month of September [Dkt. 52]. After agreeing to use of cash collateral for October, on October 29, 2025, FBOL withdrew its agreement for use of cash collateral for October and refused to execute a stipulation for continued use of cash collateral. Debtor brings this motion now on an emergency basis to obtain Court authority for use.

On October 2, 2025, Debtor presented FBOL with a budget for October 2025. On October 6, 2025, FBOL agreed to the use of cash collateral for October under the condition that the Debtor file a plan by October 15 that provided certain treatment for FBOL. Over the following week, Debtor's counsel discussed FBOL's proposal the Debtor, and JP Fritz, subchapter V trustee. On October 14, after conferring with counsel to FBOL, Debtor confirmed its acceptance of FBOL's proposal for continued use of cash collateral with a modification to the date by which a plan would be filed (late October) and requested a copy of a collateral valuation FBOL had obtained. On October 20, Debtor provided FBOL with a stipulation regarding the agreed upon terms for continued use of cash collateral. On October 22, Debtor renewed its request for a copy of FBOL's collateral valuation. JP Fritz also requested a copy of the FBOL collateral valuation on October 22. On October 29, counsel to FBOL contacted Debtor's counsel and informed him that FBOL was retracting its agreement for continued use of cash collateral for October (and the possibility of any further extensions) and would be filing a motion to convert or dismiss the Case, but would set the motion on regular notice and remained open to agreeing to plan terms if FBOL found them acceptable. Debtor filed its plan on November 4, 2025, four business days after learning that FBOL had retracted its agreement for use of cash collateral for October 2025. The email correspondence referenced herein is attached hereto as **Exhibit 3**.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## V.    LEGAL AUTHORITY

### A.    Relief is Justified on an Emergency Basis

By Bankruptcy Code section 363(c)(3), Congress recognized that preliminary hearings on cash collateral would frequently be held on an emergency basis by stating therein that such hearing "shall be scheduled in accordance with the needs of the debtor". 11 U.S.C. § 363(c)(3). Courts also have recognized that emergency relief on the use of cash collateral is necessary after a case is filed. *In re Center Wholesale, Inc.*, 759 F. 2d 1440, 1444 (9th Cir. 1985) ("We realize that 'in certain circumstances the entire reorganization effort may be thwarted if emergency relief is withheld' and that reorganization under the Bankruptcy Code 'is a perilous process, seldom more so than at the outset of the proceedings when the debtor is often without sufficient cash flow to fund essential business operations.' … It is for this very reason that Congress specified that hearings concerning the use of cash collateral 'shall be scheduled in accordance with the needs of the debtor.' "); *In re Sullivan Ford Sales*, 2 B.R. 350, 355 (Bankr.D.Me.1980).

In this instance, the Debtor requires immediate use of the Cash Collateral in order to fund its operations, preserve and maintain value of its business and thereby avoid irreparable harm to its ability to reorganize.  Without this relief, the Debtor's business operations will cease and its remaining assets, its inventory and receivables, will decline in value precipitously. On these facts and circumstances good cause exists for an expedited hearing on limited notice.

### B.    The Debtor Should be Authorized to Use Cash Collateral Pursuant to 11 U.S.C. § 363 to Operate, Maintain, and Preserve Assets of the Estate

The Debtor's use of property of the estate is governed by Section 363 of the Bankruptcy Code.  Section 363(c)(1) provides in pertinent part:

> If the business of the debtor is authorized to be operated under section … 1108… of this title and unless the court orders otherwise, the trustee may enter into transactions, including the sale or lease of property of the estate, in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

without notice or a hearing.

11 U.S.C. § 363(c)(1).  A debtor in possession has all of the rights and powers of a trustee with respect to property of the estate, including the right to use property of the estate in compliance with Section 363.  *See* 11 U.S.C. § 1107(a).

"Cash collateral" is defined as "cash, negotiable instruments, documents of title, securities, deposit accounts or other cash equivalents in which the estate and any entity other than the estate have an interest…" 11 U.S.C. § 363(a).  Section 363(c)(2) establishes a special requirement with respect to "cash collateral," providing that the trustee or debtor in possession may use "cash collateral" under subsection (c)(1) if "each entity that has interest in such cash collateral consents; or . . . the court, after notice and a hearing, authorizes such use, sale or lease."  *See* 11 U.S.C. § 363(c)(2)(A) and (B).

Where a debtor is operating a business, it is extremely important that access to cash collateral be allowed to facilitate the goal of reorganization, as "the purpose of Chapter 11 is to rehabilitate debtors and generally access to cash collateral is necessary to operate a business". *In re Dynaco Corp.*, 162 B.R. 389, 394 (Bankr. D.N.H. 1993), quoting *In re Stein*, 19 B.R. 458, 459 (Bankr. E.D. Pa. 1982).  It is in the best interest of the estate and its creditors to continue to maintain the Debtor's business operations, as liquidation would generate little to no recovery for general unsecured creditors and funding for the reorganization is entirely dependent upon ongoing business operations.

To obtain court authorization to use cash collateral, a debtor must establish that the "interest" of creditors holding liens on the subject collateral will remain "adequately protected." 11 U.S.C. § 363(e).  Pursuant to *United States v. Timbers of Inwood Forest*, 484 U.S. 365, 108 S. Ct 626 (1988), the "interest in property" entitled to adequate protection under 11 U.S.C. §363(e) is no more or less than the "value of the collateral" that is subject to the secured creditor's lien. under the *Timbers*' holding, a debtor is merely required to show that the secured creditor's collateral will not decline in value prospectively to establish "adequate protection."  *Timbers*, 484 U.S. 365; *In Re Ledgemere Land Corp.*, 116 B.R. 338, 343 (Bankr. D. Mass. 1990) (so long as the receivables being collected and used by the debtor are being replaced by sufficient new receivables

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

in which the creditor is granted a security interest, the creditor is adequately protected); *In re Johnson*, 90 B.R. 973, 978 (Bankr. D. Minn. 1988) (since value of the collateral has not declined, the bank is not impaired and is not entitled to receive adequate protection payments); *In re Century Inv. Fund VII, Ltd. Partnership*, 96 B.R. 884, 887 (Bankr. E.D. Wis. 1989) (where value appears to be stable, creditor is not entitled to adequate protection payments); *In re Kessler*, 86 B.R. 134, 136 (Bankr. C.D. Ill. 1988) (under *Timbers*, the sellers are not entitled to adequate protection payments, as there was no showing the 80-acre tract was depreciating in value); *In re Anderson*, 88 B.R. 877, 889 (Bankr. N.D. Ind. 1988) (secured creditor required to show a necessity for adequate protection by showing a decline in asset value from the petition date); *In re Mccombs Properties VI, Ltd.,* 88 B.R. 261 (Bankr. C.D. Cal. 1988); *In re Elmore*, 94 B.R. 670 (Bankr. C.D. Cal. 1988). Under the facts present here, allowing the Debtor to continue operations through the use of Cash Collateral as proposed herein satisfies this standard.

### C.    The FBOL's Interests Shall be Protected by a Replacement Lien in the Debtor's Post-Petition Cash, Accounts Receivable, Inventory and the Proceeds Thereof

Section 361 of Bankruptcy Code explicitly provides that "adequate protection may be provided by . . . [a] replacement lien to the extent that such . . . use [of cash collateral] results in a decrease in the value of such entity's interest in such property." 11 U.S.C. § 361(2); *See Timbers*, 484 U.S. at 370.  With respect to the security interest asserted by FBOL in the Debtor's assets, FBOL will be granted a replacement lien in the Debtor's post-petition cash, accounts receivable, inventory, and the proceeds thereof, to the same extent, validity, and priority as any lien held by FBOL as of the Petition Date, to the extent cash collateral is actually used by the Debtor.

However, since the function of adequate protection is only to preserve and not to increase the collateral subject to a secured creditor's interest, any additional value created through the Debtor's use of the Cash Collateral, whether in the form of inventory, accounts receivable or cash, will not be subject to a replacement lien, but will instead constitute an asset of the estate that all creditors will ultimately be able to look for payment.  *See*, e.g., *Qmect, Inc. v. Burlingame Capital Partners II, L.P.*, 373 B.R. 682 (Bankr. N.D. Ca. 2007);  ("the purpose of adequate protection is to protect lenders from diminution in the value of their collateral", and not to enhance their position).

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

Thus, each of the respective Secured Creditors' replacement liens should be limited to the amount of any diminution in its interest in Cash Collateral in existence as of the Petition Date.

Although the grant of post-petition replacement liens will, in concept, ensure the preservation of FBOL's interests in Cash Collateral, in reality, the liens will perform this function only if the Debtor, in fact, generates at least one dollar of value for every dollar of Cash Collateral expended. The Debtor's operations over four months post-petition demonstrate that replacement liens will fully protect FBOL's interest in Cash Collateral. The Budget indicates that the Debtor will operate on a cash flow positive basis during the budgeted period, and that its assets will increase in value during such period.

The Debtor believes that the projections of its business operations as set forth in the Budget are reasonable. The business assumptions underlying the operations projected in the Budget are essentially in accordance with the Debtor's historical experience, as adjusted to take into account recent or projected events. Accordingly, the Debtor believes that the budget establishes that the proposed replacement liens being granted to each of the Secured Creditors will adequately protect FBOL's interests.

## VI.    CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Motion be granted authorizing interim use of cash collateral and setting a final hearing and that the Court approve an Order substantially in the form attached hereto as **Exhibit 1**.

Dated:  November 5, 2025          **WEINTRAUB ZOLKIN TALERICO & SELTH LLP**

By: _/s/ Derrick Talerico_
                Derrick Talerico

Counsel to Applied Powdercoat, LLC

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## DECLARATION OF OSEI APPIAGYEI

I, Osei Appieagyei, hereby declare as follows:

1.      I am the managing member of The Pella Group, LLC, which in turn is the managing member of Applied Powdercoat, LLC.

2.      I make this declaration in support of the Debtors' *Emergency Motion for Order Authorizing Use of Cash Collateral* (the "**Motion**"). Terms not defined herein shall have the same meanings ascribed to them in the Motion.

3.      The Debtor is a powdercoat application business. Powdercoating is the application of polymer resin typically to commercial parts and components to provide a color finish with protective properties.

4.      The Debtor commenced this case because it was behind on payments to FBOL, its senior secured lender.  FBOL has a first priority lien on accounts receivable, inventory, and other assets.  FBOL brought suit against the Debtor and was poised to obtain a default in that case. In addition, creditor Expert Staffing West had commenced collection action on a default judgment.

5.      For ease of reference, all known secured creditors (as identified by filed financing statements), along with their asserted interests, are described in the chart below. The value of all of the Debtor's assets (including accounts receivable and inventory) is less than the claim of FBOL. As such, FBOL is the only secured creditor whose interests are secured by accounts receivable and inventory and implicated by this Motion:[2]

| Creditor Name | Description of Collateral | UCC-1 | Date UCC-1 Filed | Estimated Claim Amount |
|---|---|---|---|---|
| First Bank of the Lake | Personal property including A/R and inventory | UCC-1 (x1933) (California) | 7/7/2022 | $1,209,372.16 |
| Applied Powdercoat, Inc. | Limited personal property | UCC-1 (x0022) (California) | 8/15/2022 | $99,651.00 |

---

[2] Expert Staffing West filed a UCC-1 on February 3, 2025. Expert Staffing West was never granted a security interest in any assets by the Debtor. A default judgment was entered against Debtor and in favor of Expert Staffing West on December 18, 2024 for $277,411.81.

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

| Creditor Name | Description of Collateral | UCC-1 | Date UCC-1 Filed | Estimated Claim Amount |
|---|---|---|---|---|
| First Bank of the Lake | All personal property | UCC-1 (x1933) (California) | 12/21/2022 | (duplicate) |

6.      The Applied Powdercoat, Inc. ("**AP Inc.**") lien is associated with seller financing extended to the Debtor when it acquired AP Inc.'s business through an asset purchase agreement in 2022. The AP Inc. lien extends to certain specified personal property and does not cover accounts receivable or inventory. FBOL is the only secured creditor with an interest in accounts receivable and inventory.

7.      The chart below tracks Debtors cash and accounts receivable at relevant points in this Case: the Petition Date (establishing FBOL's interest in Cash Collateral); September 29 (the approximate date through which use of Cash Collateral was authorized), November 3 (approximate current value of Cash Collateral), and December 1 (estimated Cash Collateral value at the end of the current month).

| Cash Collateral | Petition Date | September 29 | November 3 | December 1 (estimated) |
|---|---|---|---|---|
| Cash | $9,385 | $29,406 | $10,925 | $44,425 |
| Accounts Receivable | $143,200 | $179,135 | $190,472 | $200,472 |
| Total | $152,585 | $208,542 | $201,399 | $244,899 |

8.      As the chart demonstrates, FBOL's interest in Cash Collateral has been well-protected throughout this Case. Replacement liens in post-petition receivables and cash have been more than adequate to protect FBOL's interest in Cash Collateral. As the Case has progressed, the security of FBOL's interest in Cash Collateral has trended up – currently with approximately $50,000 of increased value and a projected excess cushion of more than $90,000 through November. The Debtor has demonstrated that its operations and financials are stable and improving. If Debtor is allowed to continue operations, Debtor has and will have more than adequate collateral for replacement Post-Petition Liens to cover the Cash Collateral proposed to be used. Given the income generated by operations, the Debtor submits that the interests of FBOL are adequately

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

protected by the Post-Petition Liens. The Debtor's proposed budget for use of Cash Collateral (the "**Budget**") is attached hereto to the Motion as **Exhibit 2**. The Budget is specific to November 2025, but Debtor proposes the Budget as the controlling budget for the Case.

9. The Debtor's Bankruptcy Case has been driven by resolving the cost of its lease. After first pursuing a relocation out of Santa Barbara, Debtor determined its business would need to remain in or near Santa Barbara to be successful. Debtor then explored a multitude of options in Santa Barbara including remaining in its current space with its landlord, Hagan Capital LLC ("**Hagan**"). Ultimately, Debtor and Hagan could not agree on terms for Debtor to remain. Debtor has now submitted an LOI for a new lease on a location for which Debtor intends to move to by year end. Hagan has agreed to allow Debtor to remain in their current location through the end of the year in exchange for continued monthly rent payments of $18,500. The Debtor has filed a subchapter V plan based upon the new selected location. Debtor will negotiate with FBOL and Hagan to address an objections to the plan they may raise.

I declare under penalty of perjury of the laws of the United States of America that the foregoing is true and correct. Executed on November 5, 2025, at Hartford, Connecticut.

OSEI APPIAGYEI

WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

## DECLARATION OF DERRICK TALERICO

I, Derrick Talerico, hereby declare as follows:

1.    I am an attorney duly admitted to practice law in the state of California and am admitted *inter alia* to the United States District Court for the Central District of California, and therefore to practice in the United States Bankruptcy Court for the Central District of California. I have personal knowledge of the facts stated herein and knowledge based on business records of my law practice and of my law firm, Weintraub Zolkin Talerico & Selth LLP (the "Firm").

2.    I submit this Declaration in support of the foregoing Motion.

3.    The Debtor and FBOL have previously stipulated to the Debtor's use of its cash collateral [Dkt. 15], approved by order of this Court [Dkt. 43] (the "**First Stipulation and Order**"). The First Stipulation and Order approved Debtor's use of cash collateral for the months of July and August pursuant to weekly budgets and as further set forth therein. The First Stipulation and Order also provided a mechanism for further use of cash collateral on a monthly basis upon filing of further stipulations which would take effect without further order of the Court. The Debtor and FBOL filed one such stipulation for continued use of cash collateral for the month of September [Dkt. 52]. After agreeing to use of cash collateral for October, on October 29, 2025, FBOL withdrew its agreement for use of cash collateral for October and refused to execute a stipulation for continued use of cash collateral.

4.    On October 2, 2025, Debtor presented FBOL with a budget for October 2025. On October 6, 2025, FBOL agreed to the use of cash collateral for October under the condition that the Debtor file a plan by October 15 that provided certain treatment for FBOL. Over the following week, I discussed FBOL's proposal the Debtor, and JP Fritz, subchapter V trustee. On October 14, after conferring with counsel to FBOL, Debtor confirmed its acceptance of FBOL's proposal for continued use of cash collateral with a modification to the date by which a plan would be filed (late October) and requested a copy of a collateral valuation FBOL had obtained. On October 20, Debtor provided FBOL with a stipulation regarding the agreed upon terms for continued use of cash collateral. On October 22, Debtor renewed its request for a copy of FBOL's collateral valuation. JP Fritz also requested a copy of the FBOL collateral valuation on October 22. On October 29, counsel

EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL

to FBOL contacted me and informed me that FBOL was retracting its agreement for continued use of cash collateral for October (and the possibility of any further extensions) and would be filing a motion to convert or dismiss the Case, but would set the motion on regular notice and remained open to agreeing to plan terms if FBOL found them acceptable. Debtor filed its plan on November 4, 2025, four business days after learning that FBOL had retracted its agreement for use of cash collateral for October 2025. True and correct copies of the email correspondence referenced herein is attached to the Motion as **Exhibit 3**.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 4th day of November, 2025, at Los Angeles, California.


  */s/ Derrick Talerico*
  Derrick Talerico

5.

EMERGENCY MOTION TO APPROVE USE OF CASH COLLATERAL

# EXHIBIT 1

Derrick Talerico (State Bar No. 223763)
dtalerico@wztslaw.com
WEINTRAUB ZOLKIN TALERICO & SELTH LLP
11766 Wilshire Boulevard, Suite 730
Los Angeles, CA 90025
Telephone: (424) 500-8552

Counsel to APPLIED POWDERCOAT, LLC

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA – NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 9:25-bk-10762-RC |
| APPLIED POWDERCOAT, LLC, | Chapter 11 |
| Debtor and Debtor in Possession. | Subchapter V |
| | **ORDER GRANTING INTERIM USE OF CASH COLLATERAL AND SETTING FINAL HEARING** |
| | Hearing:<br>Date: November 7, 2025<br>Time: 9:00 am<br>Courtroom: 201<br>1415 State Street<br>Santa Barbara, CA 93101 |
| | Judge: Hon. Ronald Clifford III |

A hearing was held on November 7, 2025 (the "Initial Hearing") on Debtor's Motion for Use of Cash Collateral. The Court, having considered the Motion and other documents filed in support

of the Motion, the arguments and representations of counsel at the hearing on the Motion, finding

notice of the Initial Hearing proper, and good cause appearing therefor,

**IT IS HEREBY ORDERED** that:

1.      The Motion is granted on an interim basis;

2.      Debtor is authorized to use Cash Collateral as set forth in the Motion and the Budget

attached thereto;

3.      FBOL is granted Post-Petition Liens as set forth in the Motion;

4.      A final hearing on the Motion is set for _____.

### ###

**WEINTRAUB ZOLKIN TALERICO & SELTH LLP**
11766 WILSHIRE BLVD., SUITE 730
LOS ANGELES, CA 90025

# EXHIBIT 2

**BUDGET**

| MONTHLY OPERATING BUDGET | Week of 11/3 | Week of 11/10 | Week of 11/17 | Week of 11/24 |
|---|---|---|---|---|
| Accounts Receivable | $190,472.92 | $185,472.92 | $190,472.92 | $195,472.92 |
| Cash on Hand | $10,925.84 | $18,425.84 | $23,425.84 | $20,925.84 |
| Anticipated Collections | $40,000.00 | $30,000.00 | $30,000.00 | $30,000.00 |
| **Cost of Goods Sold** | | | | |
| Total 5000 Direct Labor | $26,000.00 | $0.00 | $26,000.00 | $0.00 |
| Total 5010 Raw Materials | $5,000.00 | $5,000.00 | $5,000.00 | $5,000.00 |
| Total 5023 Shop Supplies & Small Tools | $500.00 | $500.00 | $500.00 | $500.00 |
| Total 5024 Utilities | $0.00 | $0.00 | $0.00 | $0.00 |
| Total 5063 Postage and Shipping | $500.00 | $500.00 | $500.00 | $500.00 |
| Total 5420 Equipment Rental | $0.00 | $0.00 | $0.00 | $0.00 |
| **Total Cost of Goods Sold** | **$32,000.00** | **$6,000.00** | **$32,000.00** | **$6,000.00** |
| **Expenses** | | | | |
| Total 6025 Advertising Expenses | $0.00 | $0.00 | $0.00 | $0.00 |
| Total 6050 Insurance | $0.00 | $0.00 | $0.00 | $0.00 |
| Total 6062 Office Expenses | $500.00 | $500.00 | $500.00 | $500.00 |
| Total 6070 Professional Fees | $0.00 | $0.00 | $0.00 | $0.00 |
| Total 6080 Rent | $0.00 | $18,500.00 | $0.00 | $0.00 |
| Total 6090 Salary | $0.00 | $0.00 | $0.00 | $0.00 |
| Total 6100 Telephone and Fax | $0.00 | $0.00 | $0.00 | $0.00 |
| **Total Expenses** | **$500.00** | **$19,000.00** | **$500.00** | **$500.00** |
| **Total COGS and Expenses** | **$32,500.00** | **$25,000.00** | **$32,500.00** | **$6,500.00** |
| Excess Cash | $18,425.84 | $23,425.84 | $20,925.84 | $44,425.84 |
| New Receivables | $35,000.00 | $35,000.00 | $35,000.00 | $35,000.00 |
| | $185,472.92 | $190,472.92 | $195,472.92 | $200,472.92 |

**EXHIBIT 2**

**EXHIBIT 3**

 **Outlook**

---

## Re: October Cash Collateral Budget

---

**From**  Derrick Talerico <dtalerico@wztslaw.com>

**Date**  Mon 10/13/2025 3:16 PM

**To**  Bernie Kornberg <Bernie.Kornberg@millernash.com>

**Cc**  John-Patrick M. Fritz <JPF@lnbyg.com>

---

Bernie – JP and I were discussing this last week. I just tried calling you. Can you call me back?


> On Oct 6, 2025, at 10:30 AM, Kornberg, Bernie <Bernie.Kornberg@millernash.com> wrote:


Derrick,

FBOL does not have any more patience here with the continued lack of a plan, the delays, and the failure of Applied to timely ask for cash collateral.  FBOL will stipulate the cash collateral amount for October, but with the condition that the Debtor will file a Chapter 11 plan no later than October 15 and that the plan provides for a cash payment on the effective date (which will be at or near plan confirmation) of $245,373, which is the appraised liquidation value of the collateral, along with monthly payments on FBOL's remaining unsecured claim.  We will also required evidence that Applied has secured funds to pay that amount or is in the process of doing so with a realistic expectation of success.  If this does not occur, we will take the 1111(b) election and move for conversion or dismissal.

Please note the offer above is for settlement purposes only and does not constitute an admission of the value of the collateral for 506 purposes.

Thanks,

Bernie


**Bernie Kornberg**
Partner

**Miller Nash LLP**
340 Golden Shore, Ste 450 | Long Beach, CA 90802
*Direct*: 562.247.7622 | *Office*: 562.435.8002
**Email** | **Bio** | **Insights** | **Website**

*Our attorneys regularly offer insights to address the challenges faced by our clients. To visit the Miller Nash industry-focused blog overview page on our updated website: please click this link.*

---

**From:** Derrick Talerico <dtalerico@wztslaw.com>
**Sent:** Thursday, October 2, 2025 8:38 PM
**To:** Kornberg, Bernie <Bernie.Kornberg@MillerNash.com>

**Cc:** John-Patrick M. Fritz <JPF@lnbyg.com>
**Subject:** Re: October Cash Collateral Budget

[EXTERNAL MESSAGE: This email originated from outside of the firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

---

$30-$50k for move. Won't begin to incur until November/December. We worked out with the landlord to stay in through that period. In discussions with them to maybe stay in the space. It's not likely, but possible.

> On Oct 2, 2025, at 3:56 PM, Kornberg, Bernie
> <Bernie.Kornberg@millernash.com> wrote:

Derrick,

Are there any costs here for the proposed move?

Bernie

**Bernie Kornberg**
Partner

**Miller Nash LLP**
340 Golden Shore, Ste 450 | Long Beach, CA 90802
*Direct:* 562.247.7622 | *Office:* 562.435.8002
**Email** | **Bio** | **Insights** | **Website**

*Our attorneys regularly offer insights to address the challenges faced by our clients. To visit the Miller Nash industry-focused blog overview page on our updated website: please click this link.*

----------------------------------
**CONFIDENTIALITY NOTICE:** This email message may contain confidential or privileged information. If you have received this message by mistake, please do not review, disclose, copy, or distribute the email. Instead, please notify us immediately by replying to this message or telephoning us. Thank you.
----------------------------------

**From:** Derrick Talerico <dtalerico@wztslaw.com>
**Sent:** Thursday, October 2, 2025 12:51 PM
**To:** Kornberg, Bernie <Bernie.Kornberg@MillerNash.com>
**Cc:** John-Patrick M. Fritz <jpf@lnbyg.com>
**Subject:** October Cash Collateral Budget

[EXTERNAL MESSAGE: This email originated from outside of the firm. Do not click links or open attachments unless you recognize the sender and know the content is safe.]

---

Bernie - Weekly October budget is attached. Osei obviously wanted to get this out sooner but he's taken on a lot with leading operations, restoring and maintaining client relationships, and addressing the potential move. Please let me know if we can submit a stip for the October budget.

Derrick

-

## Weintraub Zolkin Talerico & Selth LLP

Derrick Talerico
11766 Wilshire Blvd., Suite 730
Los Angeles, CA 90025
Direct 424-500-8552 | Cell 310-403-0090
dtalerico@wztslaw.com | www.wztslaw.com

 **Outlook**

---

**RE: Equipment Appraisal**

---

**From** John-Patrick M. Fritz <JPF@lnbyg.com>

**Date** Wed 10/22/2025 5:16 PM

**To** Derrick Talerico <dtalerico@wztslaw.com>; Bernie Kornberg <Bernie.Kornberg@millernash.com>

Hi Bernie. I would be interested in seeing that appraisal, too.  Thank you.  JP

JOHN-PATRICK M. FRITZ, Esq.

LEVENE, NEALE, BENDER, YOO & GOLUBCHIK  L.L.P.
2818 La Cienega Ave.  |  Los Angeles, CA  90034
Main  310 229 1234  |  Direct  310 229 3395  |  Cell  323 240 1174
jpf@lnbyg.com  |  https://urldefense.proofpoint.com/v2/url?u=http-
3A__www.lnbyg.com&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-
v5A_CdpgnVfiiMM&r=6dYocq3xlv7ChfzSadfcDblig5NUj01-
EjeQaOYqNJw&m=Cg8m1cQApW38a11S_y2a9iAhe2cg8-
7zlygE4fgoHs4Nkv7DsGzvTvfjzvwBLJGY&s=xfr6oZOI4rN9zCIv3KDjv1EJ9mewS95VhI3JbUYqPOM&e=

The preceding E-mail message is subject to Levene, Neale, Bender, Yoo & Golubchik  L.L.P.'s
email policies which can be found at https://urldefense.proofpoint.com/v2/url?u=http-
3A__www.lnbyg.com_disclaimers.htm&d=DwIGaQ&c=euGZstcaTDllvimEN8b7jXrwqOf-
v5A_CdpgnVfiiMM&r=6dYocq3xlv7ChfzSadfcDblig5NUj01-
EjeQaOYqNJw&m=Cg8m1cQApW38a11S_y2a9iAhe2cg8-
7zlygE4fgoHs4Nkv7DsGzvTvfjzvwBLJGY&s=qR6l3bXu35HC3JnfWaEfPJ6tt54f2rupzOhwXJDOGrM&e=

-----Original Message-----
From: Derrick Talerico <dtalerico@wztslaw.com>
Sent: Wednesday, October 22, 2025 4:49 PM
To: Bernie Kornberg <Bernie.Kornberg@millernash.com>
Cc: John-Patrick M. Fritz <JPF@lnbyg.com>
Subject: Equipment Appraisal

Bernie – can we please get your clients equipment appraisal to aide our efforts to obtain financing?